```
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE
```

MACTEC Engineering & Consulting, Inc.

   v.                                    Civil No. 06-cv-466-JD
                                              Opinion No. 2007 DNH 093

OneBeacon Insurance Company

### O R D E R

MACTEC Engineering & Consulting, Inc. brought suit in state court, seeking a declaratory judgment that OneBeacon Insurance Company had a duty to defend and indemnify MACTEC against claims brought in an arbitration proceeding. OneBeacon removed the case to this court and filed a counterclaim, seeking a declaration that it does not owe a duty to defend or indemnify MACTEC in the arbitration action. MACTEC moves for partial summary judgment on the duty to defend, and OneBeacon seeks summary judgment on both its duty to defend and to indemnify.

### Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When parties file cross-motions for summary judgment, ordinarily the court must consider the motions separately to determine whether summary judgment may be entered under the Rule 56 standard.  Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004); Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002).  When parties submit cross motions for summary judgment in a non-jury case on stipulated or materially undisputed facts, the case is submitted and the court must determine the inferences to be drawn from those facts.  See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 643-44 (1st Cir. 2000).

In this case, the parties submitted a statement of agreed facts.  In addition, OneBeacon filed a "Concise Statement of Material Facts to Which There is No Genuine Issue."  MACTEC filed a response in which it objected to and qualified some of OneBeacon's factual statements and admitted others.  Therefore, to the extent summary judgment may be entered based upon the

parties' agreed facts, the case is deemed submitted.  Otherwise the usual summary judgment standard applies.

## Background

MACTEC is an engineering firm that was hired to provide engineering and consulting services to Hitchiner Manufacturing Company and Thomas & Betts Corporation (referred to collectively as "Hitchiner") for a groundwater remediation system at a superfund site in Milford, New Hampshire.  MACTEC hired Dragin Drilling, Inc. on January 21, 2003, as a subcontractor to provide services that included construction and installation of certain extraction and injection wells at the site.  Under the terms of their agreement, Dragin was required to name MACTEC as an additional insured on its commercial general liability ("CGL") policies, which it did in three CGL policies issued by OneBeacon for one year terms from June 1, 2002, through July 1, 2005.

After the remediation system at the site failed in late 2004, MACTEC brought claims seeking payment from Hitchiner in an arbitration proceeding.  Hitchiner filed counterclaims, asserting, among other things, that the remediation system failed due to improper construction of the wells by Dragin and improper design and supervision of the project by MACTEC.  MACTEC sought insurance coverage from OneBeacon, which was denied.

Discussion

MACTEC contends that OneBeacon owes it a defense against the Hitchiner counterclaims and seeks partial summary judgment on that issue. OneBeacon asserts that it does not have a duty to defend or indemnify MACTEC because the property damage asserted by Hitchiner did not occur while MACTEC was an additional insured under its policies and because MACTEC's services were excluded from coverage. MACTEC argues that the issue of indemnification cannot be resolved before liability on the underlying counterclaim is determined.

"It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." Broom v. Cont'l Cas. Co., 152 N.H. 749, 753 (2005). Any doubt or ambiguity in the allegations in the underlying complaint must be resolved in favor of the insured. Id. at 754. "The interpretation of the language of an insurance policy, like any contract language, is ultimately an issue for the court to decide." Merchants Mut. Ins. Co. v. Laighton Homes, LLC, 153 N.H. 485, 487 (2006).

OneBeacon issued three separate CGL policies to Dragin, each covering a one year period between June of 2002 and July of 2005.

Each policy covers "those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies."  The insurance applies "only if . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period."

MACTEC was named as an additional insured in each policy. The definitions of an insured in the 2002 and 2003 policies are the same:  "the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured."  The 2004-2005 policy limited coverage for an additional insured to "liability arising out of your ongoing operations performed for that insured" so that coverage "ends when your operations for that insured are completed."  The additional insured endorsement also includes an exclusion for liability arising from professional and other services.

A.   Coverage

The coverage dispute in this case primarily focuses on the parties' differing views of when the property damage that is at issue in the Hitchiner counterclaims occurred.  MACTEC asserts that the complained-of property damage occurred when the allegedly defective wells were constructed, which began in

February of 2003 and continued until the system was shut down in December of 2004. OneBeacon asserts that the complained-of property damage occurred when the remediation system was first operated, failed, and then was shut down, which was between October 25 and December 6, 2004.

Under New Hampshire law, "'the time of the occurrence resulting in the loss or damage, and not the time of the negligence, determines whether there is coverage under the policy.'" EnergyNorth Nat. Gas, Inc. v. Underwriters at Lloyd's, London, 150 N.H. 828, 836 (2004). That rule is known as an "injury-in-fact trigger" for insurance coverage. Id. at 835-36. Under that rule, property damage occurs when the injury happened, not when the predicate negligence occurred or when a hidden injury is subsequently discovered. Id. at 836. Defective workmanship does not constitute an occurrence of property damage for purposes of CGL coverage.[1] McAllister v. Peerless Ins. Co., 124 N.H. 676, 680-81 (1984).

---

[1] In McAllister, the plaintiff sought coverage under a CGL policy for claims brought against him by a customer after the plaintiff allegedly improperly constructed a leach field. 124 N.H. at 678. The New Hampshire Supreme Court held that defective workmanship is complete before the affected system is put into service. Id. The court also held that claims of defective workmanship in an underlying complaint do not allege an occurrence. Id.; see also High Country Assocs. v. N.H. Ins. Co., 139 N.H. 39, 42-43 (1994) (distinguishing defective work and negligent construction from actual damage).

The Hitchiner counterclaims allege that MACTEC failed to design and construct the wells so that the remediation system would meet the required standard and operate properly.  Hitchiner alleges that "MACTEC retained Dragin to construct and install the extraction and injection wells in February and March 2003" and that MACTEC breached its duties to hire a competent subcontractor and to supervise Dragin to ensure that its work was done correctly.  Counterclaims ¶ 24.  The counterclaims state that Dragin improperly constructed the wells which "caused or contributed to cause the injection wells not to perform as designed."  Id. ¶ 28.  Hitchiner states that the remedial system MACTEC designed did not meet the required standards "as evidenced by the fact that it simply and immediately failed following start-up."  Id. ¶ 20.

During November of 2004, after the system was started, "groundwater seepage and water inflow was observed at injection well #3, . . . [and] by the end of November [#3] was shut down because water and sand were bubbling into it, and soil around it was subsiding."  Id. ¶ 49.  Additional problems are alleged to have occurred in December of 2004 when the system was shut down completely.  Id. ¶ 50.  "As a result, since the failure in November 2004, Hitchiner and Thomas & Betts have had to engage other environmental consultants to assess the problems with the

remedy, and to design and implement a different, costly, temporary and permanent remedy."  Id. ¶ 21.

Hitchiner alleges negligence and defective workmanship by MACTEC, which resulted in a system that did not meet the required standards when it was constructed or work when it was put into operation.  Hitchiner also alleges that MACTEC's negligence caused the system to fail and alleges resulting damage to the system after start-up.  Under New Hampshire law, MACTEC's negligence prior to the system failure was not an occurrence that triggered coverage.  Therefore, only the 2004 policy is triggered by the allegations in the Hitchiner counterclaims.

B.  Additional Insured

The additional insured endorsement in the 2004 policy limits coverage to "liability arising out of your ongoing operations performed for that Insured.  A person's organization status as an Additional Insured under this Endorsement ends when your operations for that insured are completed."  The endorsement excluded coverage for property damage arising out of professional and engineering services, among other services.

OneBeacon contends that Dragin had completed its operations before the system was put into operation in October of 2004.  As a result, OneBeacon asserts, MACTEC was no longer an additional

8

insured covered by the 2004 policy when the alleged property damage occurred.  MACTEC argues that because the Hitchiner counterclaims do not allege when Dragin's operations were complete, there is no basis to conclude that the operations were not ongoing through 2004.  MACTEC also argues that Dragin was hired to construct wells that met design and performance requirements, so that Dragin's operations were ongoing until it met those contractual obligations.

Dragin's exact completion date is uncertain based on the record presented.[2]  Because Hitchiner alleges that Dragin was hired to construct and install extraction and injection wells for the project, that is the scope of Dragin's work at issue here.[3] Dragin's construction and installation of the wells would necessarily have been complete before the system was first put into operation in October of 2004.  See also McAllister, 124 N.H. at 680 (defective workmanship is complete when the work is complete).  Therefore, at the time of the property damage alleged

---

[2] Hitchiner alleges that Dragin was hired to construct the wells in February and March of 2003.  OneBeacon provides evidence that Dragin's operations were complete by August of 2003.  In either case, Dragin was not engaged in ongoing work on the project in October of 2004.

[3] MACTEC insists that the allegations in the Hitchiner counterclaims control for all purposes of determining coverage. Although the court takes no position on that theory, it will be followed here based on MACTEC's position.

in the Hitchiner counterclaims, MACTEC was no longer an additional insured under the 2004 policy.

In the absence of coverage under one of its policies, OneBeacon is not obligated to provide a defense to MACTEC in the underlying arbitration action or to indemnify MACTEC for any liability arising from that proceeding.

## Conclusion

For the foregoing reasons, the plaintiff's motion for partial summary judgment (document no. 30) is denied. The defendant's motion for summary judgment (document no. 29) is granted. The clerk of court shall enter judgment in favor of the defendant and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

August 8, 2007

cc:  Jeffrey T. Edwards, Esquire
     Peter G. Hermes, Esquire
     Daniel P. Luker, Esquire
     Joshua E. Menard, Esquire
     Roy T. Pierce, Esquire
     Erica E. Sullivan, Esquire